UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6311-CR-HUCK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOHN GALLO, et al.,

        Defendants.
_____/

**DEFENDANT GALLO'S MOTION FOR PRE-TRIAL RELEASE
ON REASONABLE CONDITIONS**

The Defendant, JOHN GALLO, through undersigned counsel, respectfully moves this honorable court for an order admitting him to pre-trial release on reasonable conditions, and in support of this motion states as follows:

**Introduction**

John Gallo was indicted in the Southern District of Florida on October 31, 2000, and charged with conspiring to import cocaine and marijuana in violation of 21 U.S.C. § 963 in count 2; conspiring to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846 in count 3; conspiring to engage in money laundering offenses in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(1) and 1957 in count 5; and finally, 17 counts of engaging in money laundering financial transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(1) and 1956(a)(1)(B)(1) in counts 17-34. According to the indictment, Gallo's alleged role in all of the conspiracies was to engage in money laundering activity with the proceeds of drug trafficking. The government is

NON-COMPLIANCE OF S.D. Fla. L.R. ~~7/1~~A 4

- 1 -

requesting that this Court order pre-trial detention for Gallo. Pretrial Services disagrees with the government and has recommended that a bond is appropriate.

### John Gallo is neither a flight risk nor a danger to the community

John Gallo is a United States citizen who has resided in Southern California since 1975. Gallo has lived in the same home for the last six years with his wife and two children, ages 14 and 16. Both of his children attend school in their community. Gallo has been employed in the adult video production and distribution industry for approximately 5 years. In that capacity, he earned approximately $ 10,000 per month. Prior to that, Gallo was a partner in a financial management company in Los Angeles, California. Currently, he is Chief Financial Officer for Digital Concepts International, Inc., a publicly traded company which is engaged in the pay per view video industry. Gallo owns significant real estate properties located in Southern California which are available to secure a reasonable bond if ordered by this Court.

Gallo owns an office building. This property has an equity value of approximately $200,000. He owns, with his wife Janet, a 2 ½ acre vacant lot in Bermuda Dunes, California, with an equity value of about $140,000. Gallo also owns, with his wife, a five unit apartment building in Bermuda Dunes from which he earns rental income, with an equity value of about $100,000. Gallo's ownership of these properties not only establish his significant ties to Southern California (mitigating any alleged risk of flight), but also establish that significant security is available which will assure his presence in court when required and compliance with all conditions of supervision.

Dan Bender is Gallo's business partner and Chief Executive Officer of Digital Concepts International, Inc. He has so much confidence that Gallo will appear in Court when required (and comply with all conditions of any bond this Court sets) that he is willing to pledge his home in

RASKIN & RASKIN, P.A., ATTORNEYS AT LAW
GROVE FOREST PLAZA • 2937 S.W. 27TH AVENUE • SUITE 206 • (COCONUT GROVE) MIAMI, FLORIDA 33133-3703 • (305) 444-3400

Valley Center, California -- with an equity value of approximately $250,000 -- as collateral for any bond set by this Court.

### Gallo is the primary caregiver for his 80 year old blind mother

Sylvia Gallo, Defendant Gallo's mother, is 80 years old and legally blind. See letter from Dr. Clement Chan, of Southern California Desert Retina Consultants, attached as exhibit "A". She resides less than a mile from Gallo and Gallo has been her primary caregiver, assisting her in bathing, doing her laundry, housekeeping and similar activities. Sylvia Gallo is a diabetic suffering from heart problems. She was recently released from the hospital following an 12 day stay. She requires constant care and supervision. If Gallo is detained, his mother's precarious care will be left to his wife Janet, who is currently overwhelmed with the additional responsibilities placed upon her due to John Gallo's incarceration. See Declaration of Janet Gallo attached as exhibit "B".

### Gallo was aware of the grand jury's investigation in this matter prior to his indictment and did not flee.

Gallo was aware that this indictment was possible for some time, yet did not flee. Almost a year prior to his indictment, John Gallo became aware of the grand jury's investigation when he was informed that his bank records at Canyon National Bank in Palm Springs, California were subpoenaed. Rather than running away or hiding, Gallo immediately telephoned the Special Agent of the Internal Revenue Service who had served the subpoena on his bank. When the Agent refused to speak with Gallo, Gallo telephoned the U.S. Attorney's Office in Fort Lauderdale, Florida, to speak with the Assistant U.S. Attorney whose phone number was on the bottom of the subpoena. That AUSA also refused to speak with Gallo. Gallo's phone records, attached as exhibit "C", reflect that Gallo made the above mentioned phone calls on December 3 and 8, 1999.

By directly attempting to contact both the agent and the prosecutor handling the grand jury

- 3 -

RASKIN & RASKIN, P.A., ATTORNEYS AT LAW
GROVE FOREST PLAZA ● 2937 S.W. 27TH AVENUE ● SUITE 206 ● (COCONUT GROVE) MIAMI, FLORIDA 33133-3703 ● (305) 444-3400

investigation, Gallo attempted to deal with and confront openly his legal problems. We submit that these are not the actions of someone planning to flee the scrutiny of the government.

It should also be noted that, in connection with his business, Gallo has traveled outside the United States several times each year. With the full knowledge that he could be charged in this case at any time, Gallo returned home from his overseas travel on every occasion.

### Gallo has a history of compliance with a court's order to appear

Approximately 13 years ago, Gallo was convicted for filing a false tax return and served a short prison term for that offense. During the pendency of that case, Gallo dutifully appeared at all court hearings and was permitted to -- and did -- voluntarily surrender to his designated prison facility after his sentencing. Based on his record of appearances and respect for the system, it is apparent that Gallo will obey all court orders to appear at required hearings.

### Conclusion

John Gallo is neither a flight risk nor a danger to the community. His strong ties to his community (family, ill mother, job, etc.), his substantial ownership of property in his community, the willingness of third parties to pledge collateral for a bond, his record of appearing at court proceedings, his attempted contact with the government prior to his indictment, and his constant return from international travel with knowledge of the danger of indictment, all constitute evidence sufficient to rebut any presumptions contained in 18 U.S.C. Sec. 3142(e). Quite simply, John Gallo is an excellent bond risk. We agree with Pretrial Services that a bond is appropriate in this case and that there are reasonable conditions which will assure Gallo's presence in Court and the safety of the community.

Respectfully submitted,

RASKIN & RASKIN, P.A.
2937 S.W. 27th Ave., Suite 206
Miami, Florida 33133-3703
Telephone (305) 444-3400
Fax (305) 445-0266
E-mail: mraskin@raskinlaw.com

By: _____
MARTIN R. RASKIN
FLA. BAR NO. 0315206

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been delivered by fax this 14th day of December, 2000 to Michael Dittoe, Assistant U.S. Attorney, 500 E. Broward Blvd. Ste. 700, Fort Lauderdale, FL 33394-3002.

_____
MARTIN R. RASKIN

11/15/00

RE: Sylvia Gallo

To whom it may concern,

    The above named patient was examined in our office on October 9, 2000. At that time the best corrected visual acuities were:

    RIGHT EYE: 20/400

    LEFT EYE: 20/400

On the basis of these measurements, this patient should be classified as legally blind and be entitled to all appropriate tax deductions and social security benefits.

The diagnosis is
Visual acuities are not expected to improve.

Sincerely,

*C. Chan - MD*
Clement K. Chan, M.D., F.A.C.S.
Retina and Vitreous

340 S. FARRELL DR., SUITE A105, PALM SPRINGS, CA 92262 (760)327-6225/FAX (760)325-8333

DECLARATION OF JANET L. GALLO

I Janet L. Gallo, declare as follows:

1. I am the wife of John Paul Gallo, a defendant in Case No. 00-6311 CR-HUCK, pending in United States District Court in the Southern District of Florida. The statements contained below are true and if called to testify in this matter I could, and would, testify competently thereto.

2. I am submitting this declaration to the court because of my present inability to travel to Florida in order to testify at my husband's bail hearing on Friday, December 15, 2000. My inability is as a result of my unavoidable responsibilities which are set out relating to our children and my husband's mother. If there was anyway for me to be present at the trial hearing, I would do so and am extremely upset that I cannot attend.

3. I have been married to John Gallo for 16 years and have known him for 18 years. We currently reside at 79-888 Boqueron Way, Bermuda Dunes, California 92201, where we lease the premises for $1,000.00 per month. We have resided at the Boqueron Way address for six (6) years.

4. John Gallo and I have two sons which we love dearly. Paul Michael Gallo is 16 years of age and is a sophomore at Palm Desert High School. Mark Stephen Gallo is 14 years of age and is a high school freshman. Paul Michael Gallo has had a history of recent behavioral problems including arriving late for classes, skipping school, school suspensions, receiving D's and F's for grades despite formerly receiving A's and B's, utilizing increasingly unacceptable language, and exhibiting physical aggressiveness, even towards his parents. As a result, prior to my husband's arrest and incarceration, we were considering sending Paul Michael to a military or

1

1  similar school in order to instill the discipline which has become
2  increasingly missing from his life.  Due to my husband's legal current
3  situation, this is no longer financially possible and I am forced to deal
4  alone with this problem in conjunction with the complications discussed below
5  which have arisen relating to my husband's mother; Sylvia Gallo.
6      5.    Sylvia Gallo is 80 years of age, and as shown by the
7  attached letter from her doctor, is legally blind.  She resides less than a
8  mile from my husband and I, and in the past my husband has operated as her
9  primary care provider.  In this regard, she needs assistance on a daily basis
10 for otherwise routine activities such as bathing, washing her clothes,
11 cleaning her living quarters, and similar activities.  It has now become my
12 responsibility to undertake this burden at the same time I am required to
13 care for our sons, including the special problems relating to Paul Michael.
14     6.    In addition to Sylvia Gallo's usual problems, she is a
15 diabetic with heart complications.  Subsequent to my husband's arrest, Sylvia
16 Gallo was hospitalized at Eisenhower Hospital in Rancho Mirage, California,
17 where she remained for 12 days.  She was released to return home on December
18 6, 2000, and I have been caring for her in our home on Boqueron Way.  She
19 requires a nurse for daily medical needs.  This care is being supplemented by
20 my required checking of her blood three times a day, as well as my dealing
21 with her non-medical personal needs.
22     7.    I am unable to adequately carry these burdens by myself
23 and, as a result, have begun to be concerned about my own health from the
24 accompanying stress
25     8.    As the court knows, my husband, more than 10 years ago,
served a number of months in federal prison for an income tax violation.  We

were married at that time, but I know that my husband made all required court appearances in that matter and was even allowed to surrender himself rather than be arrested. While under indictment, he was allowed to attend an out of district movie class which lasted, to the best of my recollection, for more than a week.

9. Prior to our marriage, my husband served in the United States Army and while I do not know the particulars of his service, he was honorably discharged. He is a patriotic American who recalls his days in the service with considerable pride and affection.

10. My husband is presently employed at a company called Digital Concepts International, Inc. which is located in Palm Desert, California. He owns an interest in this business along with two other individuals; Dan Bender and Jack Michelson. The company installs equipment for room movies in hotels principally for Mexico and in conjunction with this business, my husband, has traveled to locations throughout the world. These, to my knowledge, also include London and South Africa, as well as Mexico. In years past, his work with an adult movie distribution company known as KLIMAXXX Productions, Inc. also resulted in travel to a variety of foreign locations, but this company no longer does significant business.

11. It is my desire for the court to understand that John Gallo and I have a loving, close, and sound marriage. I have been this man's best friend and confident for more than 16 years. I do not believe him to be a flight risk of any sort. My husband is a fighter who will aggressively contest the case against him. In that regard, I know that my husband has been aware of the investigation which let to his present indictment since at least December of 1999 when he learned that his records had been subpoenaed

from Canyon National Bank. When he learned about the subpoena, I recall that one occasion, he attempted to telephone the Special Agent who served it, Charles R. Tecza of the Internal Revenue Service, and, on another occasion, I believe that he actually reached Special Agent Tecza. I recall that my husband was attempting to determine if there was anything he could do to assist the Government's inquiry as he desired that it be resolved. In this regard, I recall that he also telephoned the United Sates Attorneys Office in Ft. Lauderdale and I have provided my husband's counsel, James D. Henderson, with copies of our telephone records which show those calls. Also, I recall my husband being told by his tax attorney, James Lerman in Los Angeles, that his (my husband's) tax records had been subpoenaed from Mr. Lermon in June of 2000. Despite clearly knowing about the investigation, however, my husband never considered fleeing or any course of action other than to hire Mr. Henderson as his attorney to defend him.

   12. I desperately need my husband's help in dealing with the family problems noted above, especially in view of his mother's recent hospitalization. Others, who know him well, such as his business partner Dan Bender, also trust my husband, and Mr. Bender has even agreed to assist with my husband's bail by posting his own real property worth some $250,000 should the court allow him to do so. In total, I believe I could assemble an additional package of real property worth approximately $200,000. It is my understanding that the report on my husband which was prepared for the court by the Los Angeles Pre-Trial Service office has recommended a $600,000 bond secured by real estate, with various conditions such as surrender of his passport, intensive supervision, home confinement, and electronic monitoring. In view of the assets which are available, I am hopeful that the court will

4

1 consider a bond somewhat lower than $600,000 in order that we will have a
2 realistic chance of being able to post it.
3          13.   I am truly appreciative of the court's allowing me to
4 communicate with the court via this declaration and am willing to answer any
5 questions which it may have.  I can be contacted at telephone number 760/345-
6 5399 (home) and 760/861-3061 (cell), should the court desire to do so.  Once
7 again, I thank the court for its consideration.
8      The statements set forth above in this declaration are made under the
9 penalties of perjury of the laws of the United States of America.
10      Executed this 13th Day of December 2000 in Bermuda Dunes, California.

*[signature]*
Janet L. Gallo

Page 13

ULTRAMAXX PRODUCTIONS
79530 BUFFALO LN 9
PALM DESERA CA 92211-7261

REF # 760 772 1920

| Account Number | Bill Date | Payment Due Date |
|---|---|---|
| 760 815 2670 001 | DEC 12, 1999 | JAN 12, 2000 |

Subaccount: 018 344 7330 002

## AT&T Business Service
## Call Detail

| ITEM | DATE | TIME (hh:mm:ss) | PLACE | AREA CODE/ NUMBER | DURATION (hh:mm:ss) | CALL TYPE | RATE PERIOD | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | LONG DISTANCE SERVICE | | | | | | | |
| | BILLED NUMBER: 760 772-1928 | | | | | | | |
| 1 | 12/02/99 | 10:45:40A | TO VALLEY CTR | CA 760 751-8723 | 10:44 | DDC | MFLAT | 0.97 |
| 2 | 12/02/99 | 12:55:06P | TO MONTREAL | PQ 514 333-7635 | 1:32 | DDC | MFLAT | 0.14 |
| 3 | 12/02/99 | 12:56:13P | TO MONTREAL | PQ 514 335-4461 | 17:08 | DDC | MFLAT | 1.54 |
| 4 | 12/03/99 | 9:15:01A | TO UK | UK 4410317784 | 3:34 | DDC | MFLAT | 0.32 |
| 5 | 12/03/99 | 9:22:21A | TO LONG BEACH | CA 562 708-2238 | 0:33 | DDC | MFLAT | 0.05 |
| 6 | 12/03/99 | 9:34:00A | TO UK | UK 441815259311 | 2:15 | DDC | MFLAT | 0.20 |
| 7 | 12/03/99 | 12:02:35P | TO NORTHRIDGE | CA 818 407-5401 | 0:30 | DDC | MFLAT | 0.05 |
| 8 | 12/03/99 | 12:43:56P | TO LONG BEACH | CA 562 708-2238 | 0:30 | DDC | MFLAT | 0.05 |
| 9 | 12/03/99 | 1:10:14P | TO NORTHRIDGE | CA 818 407-5401 | 0:30 | DDC | MFLAT | 0.05 |
| 10 | 12/03/99 | 3:11:32P | TO DEERFLDBCH | FL 954 725-1900 | 0:30 | DDC | MFLAT | 0.05 |
| 11 | 12/03/99 | 5:17:25P | TO LOSANGELES | CA 323 651-0013 | 3:46 | DDC | MFLAT | 0.34 |
| 12 | 12/03/99 | 4:09:11P | TO LONG BEACH | CA 562 708-2238 | 23:52 | DDC | MFLAT | 2.15 |
| 13 | 12/07/99 | 12:58:41P | TO MONTREAL | PQ 514 333-7635 | 0:30 | DDC | MFLAT | 0.05 |
| 14 | 12/08/99 | 7:50:22A | TO MONTREAL | PQ 514 335-4461 | 2:50 | DDC | MFLAT | 0.26 |
| 15 | 12/08/99 | 8:44:51A | TO LOUISVILLE | KY 502 585-4619 | 2:31 | DDC | MFLAT | 0.23 |
| 16 | 12/08/99 | 8:50:02A | TO LONG BEACH | CA 562 708-2238 | 0:30 | DDC | MFLAT | 0.05 |
| 17 | 12/08/99 | 9:15:03A | TO NORTHRIDGE | CA 818 407-5401 | 2:35 | DDC | MFLAT | 0.23 |
| 18 | 12/08/99 | 9:17:59A | TO CAMARILLO | CA 805 402-0349 | 0:30 | DDC | MFLAT | 0.05 |
| 19 | 12/08/99 | 9:59:01A | TO NORTHRIDGE | CA 818 886-6322 | 0:30 | DDC | MFLAT | 0.05 |
| 20 | 12/08/99 | 10:00:25A | TO LOSANGELES | CA 323 651-0013 | 5:02 | DDC | MFLAT | 0.45 |
| 21 | 12/08/99 | 2:06:16P | TO VAN NUYS | CA 818 984-1700 | 6:45 | DDC | MFLAT | 0.61 |
| 22 | 12/08/99 | 2:27:46P | TO LOUISVILLE | KY 502 585-4619 | 1:40 | DDC | MFLAT | 0.15 |
| 23 | 12/09/99 | 7:58:29A | TO PALMDALE | CA 661 947-9479 | 0:35 | DDC | MFLAT | 0.05 |
| 24 | 12/09/99 | 9:31:11A | TO LOSANGELES | CA 323 651-0013 | 15:42 | DDC | MFLAT | 1.41 |
| 25 | 12/09/99 | 11:05:01A | TO MIAMI | FL 305 681-5033 | 1:54 | DDC | MFLAT | 0.14 |
| 26 | 12/09/99 | 2:27:16P | TO NORTHRIDGE | CA 818 407-5401 | 3:11 | DDC | MFLAT | 0.29 |
| 27 | 12/09/99 | 4:09:35P | TO GARDENA | CA 310 995-3390 | 0:30 | DDC | MFLAT | 0.05 |
| 28 | 12/09/99 | 4:35:16P | TO LAWRENCE | MA 978 738-1968 | 1:49 | DDC | MFLAT | 0.16 |
| 29 | 12/09/99 | 4:37:28P | TO SHERIDAN | OR 503 843-2780 | 1:54 | DDC | MFLAT | 0.17 |
| 30 | 12/09/99 | 4:44:21P | TO GARDEN GRV | CA 714 663-2434 | 1:14 | DDC | MFLAT | 0.11 |
| 31 | 12/10/99 | 8:00:14A | TO VALLEY CTR | CA 760 751-8723 | 0:30 | DDC | MFLAT | 0.05 |
| 32 | 12/10/99 | 8:06:28A | TO BROOKLYN | NY 718 832-9035 | 0:30 | DDC | MFLAT | 0.05 |
| 33 | 12/10/99 | 9:00:37A | TO NO HOLLYWD | CA 818 505-1125 | 6:30 | DDC | MFLAT | 0.59 |
| 34 | 12/10/99 | 1:39:49P | TO VAN NUYS | CA 818 408-1519 | 1:35 | DDC | MFLAT | 0.14 |
| 35 | 12/10/99 | 2:26:07P | TO NORTHRIDGE | CA 818 886-6322 | 2:49 | DDC | MFLAT | 0.25 |
| 36 | 12/11/99 | 9:15:02A | TO LOSANGELES | CA 213 807-2273 | 3:43 | DDC | MFLAT | 0.33 |
| 37 | 12/11/99 | 9:27:36A | TO NO HOLLYWD | CA 818 505-1125 | 0:30 | DDC | MFLAT | 0.05 |
| 38 | 12/11/99 | 9:34:19P | TO NORTHRIDGE | CA 818 701-1737 | 4:57 | DDC | MFLAT | 0.45 |
| 39 | 12/11/99 | 10:18:52A | TO LONG BEACH | CA 562 708-2238 | 0:30 | DDC | MFLAT | 0.05 |
| 40 | 12/11/99 | 10:19:30A | TO LAGUNA BCH | CA 949 499-4689 | 0:30 | DDC | MFLAT | 0.05 |
| 41 | 12/11/99 | 10:27:09A | TO NO HOLLYWD | CA 818 505-1125 | 0:30 | DDC | MFLAT | 0.05 |
| 42 | 12/11/99 | 10:44:01A | TO CAMARILLO | CA 805 402-0349 | 0:30 | DDC | MFLAT | 0.05 |
| 43 | 12/11/99 | 12:00:19P | TO LOUISVILLE | KY 502 585-4619 | 0:30 | DDC | MFLAT | 0.05 |
| 44 | 12/11/99 | 12:06:35P | TO CANOGAPARK | CA 818 886-2574 | 0:30 | DDC | MFLAT | 0.05 |
| 45 | 11/16/99 | 9:55:44A | TO S AFRICA | RA 27117406644 | 1:06 | DDC | PEAK | 0.42 |
| 46 | 11/16/99 | 8:01:35A | TO S AFRICA | RA 27024626508 | 0:30 | DDC | PEAK | 0.19 |
| 47 | 11/16/99 | 8:03:28A | TO S AFRICA | RA 27024626508 | 21:44 | DDC | PEAK | 4.26 |
| 48 | 11/16/99 | 8:34:59A | TO S AFRICA | RA 27117406644 | 1:54 | DDC | PEAK | 0.72 |
| 49 | 11/17/99 | 11:09:29A | TO S AFRICA | RA 27117406644 | 3:48 | DDC | PEAK | 1.44 |
| 50 | 11/18/99 | 8:02:42A | TO S AFRICA | RA 27024626508 | 4:48 | DDC | PEAK | 1.82 |

