UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6311 CR-HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN GALLO, et al.,

    Defendants.

_____

### DEFENDANT GALLO'S MOTION FOR BAIL PENDING SENTENCING

The Defendant, JOHN GALLO, through undersigned counsel, respectfully moves this honorable court for an order admitting him to bail on reasonable conditions pursuant to 18 U.S.C. §§ 3141(b) and 3143(a), and in support of this motion states as follows:

#### Introduction

John Gallo was indicted in the Southern District of Florida on October 31, 2000, and charged with conspiring to import cocaine and marijuana in violation of 21 U.S.C. Sec. 963 in count 2; conspiring to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. Sec. 846 in count 3; conspired to engage in money laundering offenses in violation of 18 U.S.C. Secs. 1956(h), 1956(a)(1)(A)(1) and 1957 in count 5; and finally, 17 counts of engaging in money laundering financial transactions in violation of 18 U.S.C. Sec. 1956(a)(1)(A)(1) and 1956(a)(1)(B)(1) in counts 17-34. According to the indictment, Gallo's alleged role in all of the

1



conspiracies charged in the indictment including the drug trafficking conspiracies alleged in counts 2 and 3, was to engage in money laundering activity with the proceeds of drug trafficking. At the defendant's initial bail hearing before Magistrate Judge William C. Turnoff, the Government moved for detention primarily on the basis that the defendant, if convicted, was facing a Guidelines Sentence of in excess of 20 years and that it was investigating information that he may have foreign bank accounts. As a result of the Government's position, Magistrate Judge Turnoff, on December 15, 2000, ordered the defendant detained, but invited undersigned counsel to renew his bail request upon the garnering of additional information. It is here noted that all other defendants in the case, including those who were charged with actually running the drug operation and with importing and distributing narcotics, were admitted to bail. In view of his subsequent guilty plea, which included forfeiture of the entities involved in John Gallo's violation, the defendant elected not to further make application for bail while he served a significant portion of his forthcoming jail term while awaiting formal sentencing. As a result of recent events set out below, however, including the deteriorating medical status of his mother who may be terminal, the defendant now makes this application pursuant to Title 18, United States Code, Sections 3141(b) and 3143(a).

## Memorandum of Law

Title 18, United States Code, Section 3143(a) provides, in substance, that a person who is found guilty of an offense may be admitted to bail pending sentence if the court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the community. It is the position of the defendant that his current circumstances demonstrate conclusively that he meets this test. The Government, however, opposes this application.

**John Gallo is Neither a Flight Risk Nor a Danger to the Community**

John Gallo is a U.S. citizen residing in Southern California since 1975. He is a veteran of the United States Army who was honorably discharged. Prior to his incarceration, Gallo had lived in the same rented home for the last six years with his wife of 19 years, Janet, and two children, Mark and Paul-Michael, ages 15 and 16. He had been employed in the adult video production and distribution industry for approximately 5 years, where he earned approximately $10,000 per month. Previously, Gallo had been a partner in a financial management company in Los Angeles, California. At the time of his arrest, he was the Chief Financial Officer for Digital Concepts International, Inc., a publicly traded company which is engaged in the pay per view video industry essentially servicing hotels and hotel chains primarily in Mexico and South America. He maintains a stock interest in Digital Concepts International, Inc. and will again work there upon his eventual release from custody. Daniel Bender, the company's present manager, has informed undersigned counsel that it has recently obtained various hotel distribution contracts which portend the company's bright future and that he looks forward to John Gallo's return and his imaginative ideas and marketing abilities. The defendant owns, with his wife Janet, a five unit apartment building in Bermuda Dunes, California, which produces modest rental income, and has a market value of between $350,000 – $375,000 and an equity value of approximately $125,000. In addition, Daniel Bender, Gallo's business partner, and Chief Executive Officer of Digital Concepts International, Inc., has sufficient confidence that John Gallo will appear in court as scheduled and comply with all required conditions that he is willing to pledge his home in Valley Center, California, with an equity value of $250,000 - $300,000, as the collateral for any bond which the court might set. In combination, the

defendant's family and promising business interests in Southern California alone appear to mitigate any alleged risk of flight. This application, however, is based on considerably more.

### Gallo is the Primary Caregiver for his 81 Year Old Blind Mother

Sylvia Gallo, Defendant Gallo's mother, is 81 years old, legally blind, and requires constant care and supervision. This has been independently verified by the U.S. Probation Office. Sylvia Gallo resides less than a mile from the defendant who has been her principal caregiver, with responsibility for everything from assisting her in bathing and doing her laundry, to housekeeping and similar activities. These duties are now undertaken by the defendant's wife Janet. Sylvia Gallo is a diabetic who suffers from heart problems and is presently experiencing renal failure which may be life threatening. Attached hereto as Exhibit "A" are notes received from one of Sylvia Gallo's attending physicians who believes that the defendant should be by his mother's side as soon as possible as death may be imminent. In addition to the above, on September 24, 2001, Sylvia Gallo fell and broke her hip, was hospitalized through the emergency room, and a decision as to whether surgery was required was being considered at the time of the drafting of this motion.

In addition to the circumstances related to the defendant's mother, his wife Janet has encountered significant difficulties with their two sons, one of whom (Mark) has attention deficit disorder, and the other (Paul-Michael) has serious behavioral issues. The difficulties in dealing with and controlling these troublesome teenagers has significantly increased for the defendant's wife Janet since his incarceration. It is felt that even a short time at home could have a highly beneficial effect on the lives of two young men who desperately need help. United States Probation Officer Connie Garcia, who was preparing the defendant's presentence report, is well

4

aware of the problems with the Gallo children and can attest to them should the court deem it necessary. Correspondence to the U.S. Probation Office from Janet Gallo detailing the problems with the defendant's sons is attached hereto as Exhibit "B."

### Gallo Was Aware of the Grand Jury's Investigation in this Matter Prior to his Indictment and Did Not Flee

Almost a year prior to his indictment, John Gallo became aware of the grand jury's investigation when it subpoenaed his bank records at Canyon National Bank in Palm Springs, California. However, instead of fleeing, Gallo telephoned the Special Agent of the Internal Revenue Service who had served the subpoena on his bank. When the agent, Charles Tecza, realized who he was, he refused to speak with Gallo. Gallo then telephoned the U.S. Attorney's Office in Fort Lauderdale, Florida, to speak with the Assistant U.S. Attorney whose phone number was on the bottom of the subpoena, Jeffrey Sloman. Mr. Sloman refused to speak with Gallo. Gallo's phone records, attached as Exhibit "C," reflect that Gallo made the above mentioned phone calls on December 3 and 8, 1999, many months prior to his indictment. By directly attempting to contact, by telephone, both the agent and the prosecutor handling the grand jury investigation, Gallo was attempting to discuss the investigation with the government and to confront openly his legal problems. When no discussion was forthcoming, he thereafter retained legal counsel. These are hardly the actions of someone planning to exit the scrutiny of the government. To the contrary, Gallo has a history of obeying a court's order that he appear at court proceedings.

### Gallo Has a History of Compliance with a Court's Order to Appear

Approximately 13 years ago, John Gallo was convicted for filing a false tax return. Gallo served a short prison term for that offense, but during the pendency of the proceedings he dutifully appeared at all court hearings and was even permitted to voluntarily surrender to his designated prison facility after his sentencing and to travel outside the district. The Government can point to no indication that the present circumstances involving John Gallo would result in him behaving differently if he were allowed the opportunity to deal with his legitimate and significant family problems prior to serving the remainder of his sentence. Release of John Gallo on bail in order that he could spend a short time with a mother who will undoubtedly not survive the completion of the defendant's jail term, and so that he could assist in dealing with his sons, appears reasonable, logical, and beneficial.

### Changed Circumstances Pursuant to Defendant's Guilty Plea

During April, 2001, Defendant Gallo entered a guilty plea to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. This plea substantially reduced his Sentencing Guidelines exposure from the some 21 years which existed at the time of defendant's initial bail hearing before Magistrate Judge Turnoff. Although there may be a dispute between the defendant and the Government which could affect his sentence by some months, undersigned counsel believes the correct offense level to be a 22. This offense level, in Criminal History Category II, sets forth a sentence of 46-57 months. The Government, in the plea agreement, is recommending a sentence at the low end of the offense level calculation. Almost 11 months in custody have already been served. Some 7 months can be earned in good time credits on a 46 month sentence. Further, defendants routinely are assigned to half-way houses with 4-5 months

6

left on their sentences. The probation officer drafting John Gallo's presentence report, Ms. Connie Garcia, has indicated that she will be, most probably, recommending to the court that the defendant be placed in the federal prison drug program. Successful completion of this program reduces a defendant's sentence by up to 12 additional months and guarantees assignment to a half-way house for the last 6 months of one's sentence (rather than the usual 4-5 months noted above). Against this background, the defendant may be facing as little as 15-16 months in actual custody from this point forward. In view of the family situation, community ties, the changed circumstances, and other factors raised in this application, the risk of flight or of any inappropriate actions by this defendant seems virtually non-existent. In fact, during undersigned counsel's discussions with United States Probation Officer Connie Garcia, who is preparing the defendant's presentence report, she has informed counsel that she has discovered no information that indicates the defendant is a flight or poor bail risk. She pointedly stated that she is, in fact, concerned for the welfare of Mr. Gallo's sons in view of their current behavior related problems. Also, although the defendant has provided the Government with substantial and sufficient information with which to conduct other money laundering investigations relating to his handling of the funds underlying his own guilty plea, it is not yet known whether this will result in a still additional reduction in Defendant Gallo's jail time.

Additionally, at the defendant's initial bail hearing the Government informed the Magistrate Judge that it was investigating the possibility that the defendant maintained various foreign bank accounts. This, of course, in view of the then existing 21 years of potential prison time, the Government argued, indicated a high risk of flight. The defendant, however,

maintained no such bank accounts and none have been located. The defendant, in fact, currently has insufficient funds to meet many of his obligations, including his own attorney's fees.

Finally, the Government, at the initial bail hearing, informed the Magistrate Judge that it had been informed by an individual named Dale Rozen that the defendant had a number of guns. Follow-up investigation by undersigned counsel, however, revealed that Mr. Rozen was a business partner of the defendant some 11-12 years ago, that they had not interacted since that time, and that while the defendant did previously own a gun collection, he disposed of it at the time of his income tax conviction as he could no longer legally keep it; a fact about which Mr. Rozen was necessarily unaware.

## Conclusion

John Gallo is neither a flight risk nor a danger to the community. He has strong ties to Southern California. His mother is experiencing serious health problems which appear to be terminal, and his children are undergoing behavioral problems which his wife cannot handle. He owns property in his community, and is involved with a legitimate business (Digital Concepts International, Inc.) which has demonstrable economic potential and which plans to continue to employ him. There are third parties who know him who are willing to pledge collateral up to $250,000 for a bond. The defendant has a proven track record of appearing at court proceedings and his attempted contact of the case agent and prosecutor in his case prior to his indictment all constitute evidence sufficient to rebut any presumption that he ever planned to flee. Even assuming that an arguable risk of flight existed at some earlier point, the fact of his plea to a charge requiring far less of a custodial sentence than the Sentencing Guidelines calculation for the original charges in the indictment have drastically changed the equation. In addition, he has

now served almost a year of his sentence; even more when good time credits are included. He has provided the Government with information which could prove useful in other money laundering investigations. In summary, John Gallo is presently a good bond risk and there are certainly reasonable conditions, if such are even necessary, like electronic monitoring, by which the court could allow him to deal with his legitimate, and highly serious family problems and still permit supervising authorities to know his whereabouts at all times.

Dated: September 28, 2001

Respectfully Submitted,

LAW OFFICES OF JAMES D. HENDERSON
Attorneys for Defendant John Gallo
12121 Wilshire Boulevard, Suite 1120
Los Angeles, California 90025-1123
(310) 478-3131 (phone)
(310) 312-0078 (fax)

By: _____
    James D. Henderson
    California Bar Number 104150

Respectfully Submitted,

RASKIN & RASKIN, P.A.
Attorneys for Defendant John Gallo
2937 Southwest 27th Avenue
Miami, Florida 33133
(305) 444-3400 (phone)
(305) 443-0266 (fax)

By: _____
    Martin R. Raskin
    Florida Bar Number 0315206

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered by U.S. mail this 28th day of September, 2001, to Michael Dittoe, Assistant U.S. Attorney, 7th Floor, 500 East Broward Boulevard, Fort Lauderdale, Florida 33394.

_____
MARTIN R. RASKIN

9



**KERRIGAN FAMILY MEDICAL GROUP**
FAMILY & SPORTS MEDICINE

42-575 WASHINGTON STREET • PALM DESERT, CALIFORNIA 92211 • (760) 360-0333 • FAX: (760) 360-1053

August 30, 2001

To Whom This May Concern:

Subject: Sylvia Gallo

I petitioned the appropriate authorities to have patient's son return home as she is gravely ill. It would be in the family's best interest to have all family members present in the near future.

Please call if there are any questions.

Sincerely,

Dr. Frank Kerrigan

FK:jml

ATTACHMENT / EXHIBIT A



**KERRIGAN FAMILY MEDICAL GROUP**
FAMILY & SPORTS MEDICINE

42-575 WASHINGTON STREET • PALM DESERT, CALIFORNIA 92211 • (760) 360-0333 • FAX: (760) 360-1055

September 20, 2001

To Whom it May concern,

This is a second letter requesting authorities to consider the temporary release of John Gallo in that his mother is extremely ill and possibly terminal.

The family has requested John's return back to his mother's side for support.

Please contact me it there is any questions.

Sincerely,

Dr. Frank Kerrigan

FK:cob

July 18, 2001

To whom it may concern:

    I am writing this to give an overview of our sons' lives since their father has been incarcerated. Paul-Michael Gallo is 16 years of age; he will be 17 in October of this year. Mark Gallo is 15 years and will be 16 in March 2002.

    Mark is hurting. Father's Day was a horrible day for them and for me. Mark was angry. He walked around with tears in his eyes, but never cried. More than a couple of times he wanted to lash out, and he tried with me, nothing important but over little things. Finally, as we were walking out the door, I turned to him and in a stern but caring voice, I told him, that I am sorry that he is angry and hurt over his Dad, I knew he missed him but I will not get into an argument with him. It is ok to be angry and hurt but not to take it out on someone else. His eyes watered up but he did not cry. I told him that I was feeling the same way that he felt but I was dealing with it and had to go on.
He needed to do the same. I asked him if he would go to counseling with me but he said no. In reality no counseling will help him he needs his Dad. They were close, as he was with Paul also. Mark has started crying in the middle of the night and getting up and walking the floor. When I ask him what is wrong he just says he can't sleep. This is not like him. His grades have dropped and he is getting where he doesn't care about school. I have sent some copies of e-mails from the teachers along with this letter. Mark is Attention Deficit Disorder. A specialist in this field diagnosed him at the age of 8. He was on medication up until 3 years ago when we discussed this with his Dr. and Mark wanted to go off of it. He has been dealing with it and knows when he is not focusing. Mark is not ADHD. Lately he has been experiencing ADHD behaviors and this is because he is having just too much to handle for a young teen. He is trying so hard, and I am very proud of him. For the first time however, even with the help of IEP's and a Special Teacher he works with, he has failed two classes. He is in Summer School now but can't get the help he needs during the Summer Sessions. I am hoping that he will get the credit he needs to go on to the 10th grade. As of today, he failed Geography in Summer School. I could not get the modifications he needed and if I would have held a meeting, it was said to me that John's situation would be brought up and that would be the blame instead of the necessary modifications that needed to be in place. The teacher said that Mark did turn his assignments in but failed all tests.

Paul-Michael is having serious behavior problems. He has no male guidance and has taken out all of his anger and frustrations on me. This has become serious. He was expelled from Palm Desert High School and sent to a continuation school. He has failed those classes. He just stopped going to classes even though he is on campus. He went to Summer School and got kicked out the first day for leaving Campus. He got a job and then quit. He has


ATTACHMENT / EXHIBIT B

no self-esteem and is angry at the world. He is searching out male guidance from the wrong people mainly older teens or males in early 20's that are into things I don't want Paulie to get into. He will not take any direction of any kind. He has exhibited hostile behavior towards me and uses language that I do not think is appropriate. This is scary to me. He will not abide by any rules.

I must explain that this young man was President of the Student Council for his school. A leader in activities and a model student as well as a great kid who played sports and was concerned about other people and animals. He made great grades and was popular. Younger students looked up to him and he was great with kids that others made fun of. He was well liked by other boys and especially the girls. He had many friends and always had kids over or on the phone constantly. He would take friends to dances and to parties that didn't have dates or their other boyfriends couldn't go. Girls would wait in line to dance with him. Now, none of this is going on. He is just hurting and I am frightened that this will get worse. He refuses to go to counseling, as it seems he is getting advice from the wrong people. He needs his Dad and they need to be together as they have in the past.

I am enclosing some school papers from the schools on both the boys. They do not know that I have typed this letter and sent reports. I have tried to have a normal home but it is not normal anymore. As I felt it was important for John to be there when they were young, I think it is more important now as I see great kids, who everyone that met them complemented us on their behavior and manners now tell me how sorry they are. Most people do not know about John, I tell them he is out of town or that we are separated. People can be very cruel and it has been thrown up into all our faces that John was arrested. I don't care about me; I am an adult of 52 years of age but not to our sons. That is not fair.

I have no ideal why I am writing this letter, but I think that it needs to be said about our children before it is too late. These boys and myself are innocent and while I understand that my husband must pay for whatever he did I think we have all paid the price. I want to save these two boys. They are good kids. Please, for their sake consider what can be done.

Thank you for your time.

*Janet L. Gallo*
Janet L. Gallo